## IN THE UNITED STATES DISTRICT COURT
### FOR THE EASTERN DISTRICT OF PENNSYLVANIA

-----------------------------------------------------------------

LISA ROSS                                      :
214 N. Ruby Street                             :
Philadelphia, PA 19139                         :          CIVIL ACTION NO.: _____
                                               :
            Plaintiff,                         :          JURY TRIAL DEMANDED
                                               :
      v.                                       :
                                               :
MHM SERVICES, INC.                             :
8001 State Road                                :
Philadelphia, PA 19136; AND                    :
                                               :
MHM CORRECTIONAL SERVICES, INC.                :
8001 State Road                                :
Philadelphia, PA 19136                         :
                                               :
            Defendants.                        :

-----------------------------------------------------------------

### COMPLAINT – CIVIL ACTION

Plaintiff Lisa Ross ("Plaintiff"), by and through her undersigned attorney, for her

Complaint against Defendant MHM Services, Inc. ("MHM Services") and MHM Correctional

Services, Inc. ("MHM Correctional") (collectively, "Defendants"), alleges as follows:

### INTRODUCTION

1.      Plaintiff brings this Complaint contending that Defendants interfered with the

exercise of her rights under the Family and Medical Leave Act ("FMLA"), 29 U.S.C. § 2601, *et*

*seq.* and retaliated against Plaintiff for attempting to exercise her rights under the same.  Plaintiff

further contends that Defendants discriminated against her and ultimately terminated her

employment because of her disability, past record of impairment, and/or because Defendants

regarded her as disabled within the meaning of the Americans with Disabilities Act ("ADA"), 42

U.S.C. § 12101, *et seq.*, and retaliated against Plaintiff for seeking a reasonable accommodation

in connection with her disabilities. Plaintiff further contends that Defendants discriminated against her, subjected her to a hostile work environment, and ultimately terminated her employment because sex and race, and in retaliation for her complaints regarding the same, in violation of Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000e-1, *et seq.*, and 42 U.S.C. § 1981 ("Section 1981") (with respect to race discrimination and retaliation).

## PARTIES

2.      Plaintiff Lisa Ross is a citizen of the United States and Pennsylvania, and currently maintains a residence at 214 N. Ruby Street, Philadelphia, PA 19139.

3.      Upon information and belief, Defendant MHM Services, Inc. is a for-profit corporation organized and existing under the laws of the State of Delaware with a principal office and headquarters at 1593 Spring Hill Road, Suite 610, Vienna, VA 22182. Upon information and belief, Defendant MHM Services is a provider of behavioral health and medical specialty services which operates in over a dozen states, including the Commonwealth of Pennsylvania, where it operates as Defendant MHM Correctional Services, Inc., providing services under contract to the Philadelphia Department of Prisons and the Pennsylvania Department of Corrections.

4.      Upon information and belief, Defendant MHM Correctional Services, Inc. is a for-profit corporation organized and existing under the laws of the State of Delaware with a principal office and headquarters at 1593 Spring Hill Road, Suite 610, Vienna, VA 22182. Upon information and belief, Defendant MHM Correctional is a provider of correctional institution services operating in multiple states, including the Commonwealth of Pennsylvania, where it provides services under contract to the Philadelphia Department of Prisons and the Pennsylvania

Department of Corrections.  Upon information and belief, Defendant MHM Correctional maintains a regional office at 8001 State Road, Philadelphia, PA 19136.

## JURISDICTION AND VENUE

5.      On or around January 10, 2018, Plaintiff filed a Charge of Discrimination against Defendants with the United States Equal Employment Opportunity Commission (the "EEOC"), which was dually-filed with the Pennsylvania Human Relations Commission (the "PHRC"), thereby satisfying the requirements of 42 U.S.C. § 12117(a); 2000e-5(b) and (e).  Plaintiff's EEOC Charge was docketed as Charge No. 530-2018-01571.  Plaintiff's EEOC Charge was filed within one hundred and eight (180) days of the unlawful employment practice alleged herein.

6.      By correspondence dated April 5, 2018, Plaintiff received a Notice of Right to Sue from the EEOC regarding her Charge, advising her that she had ninety (90) days to file suit against Defendants.

7.      On or about June 26, 2018, within the relevant statutory timeline, Plaintiff filed the instant matter.

8.      Plaintiff has therefore exhausted her administrative remedies and has complied with all conditions precedent to maintaining this action.

9.      This action is authorized and instituted pursuant to the Family and Medical Leave Act ("FMLA"), 29 U.S.C. § 2601, the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101, Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000e-1, *et seq.*, and 42 U.S.C. § 1981 ("Section 1981").

10.      This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 1331 and 1343, as it is a civil rights action arising under the laws of the United States.

3

11.     The venue in this district is proper pursuant to 28 U.S.C. § 1391, inasmuch as the Plaintiff resides in this district and the events giving rise to this action occurred in this district.

## GENERAL FACTUAL ALLEGATIONS

12.     Paragraphs 1 through 11 are hereby incorporated by reference as though the same were fully set forth at length herein.

13.     Plaintiff is an African American woman.

14.     In or around June 2011, Plaintiff began her employment with Defendants when she was hired into the position of Administrative Assistant and assigned to work in the Mental Health Department of the Philadelphia Industrial Correctional Center ("PICC").

15.     Throughout the course of her employment, Plaintiff performed her job well, receiving positive feedback concerning her performance and no justifiable discipline.

## FACTUAL ALLEGATIONS REGARDING
## PLAINTIFF'S CLAIMS UNDER TITLE VII

16.     Paragraphs 1 through 15 are hereby incorporated by reference as though the same were fully set forth at length herein.

17.     A few months after Plaintiff's hiring, Plaintiff's direct supervisor was Deborah Paisley, ("Ms. Paisley"), began subjecting Plaintiff to inappropriate sexually-based remarks and harassment.

18.     For example, in late 2011, Ms. Paisley presented Plaintiff with a sex toy (a vibrator) at work.

19.     In response to Plaintiff's confused questioning, Ms. Paisley told her, "I have some presents I'm giving to people. You're going to enjoy it."

20.     Plaintiff was shocked, appalled, and significantly distressed at Ms. Paisley's inappropriate behavior.

21.     Additionally, Ms. Paisley would also take Plaintiff's keys and intentionally lock her out of the office, telling her, "Welcome to jail life."

22.     Ms. Paisley's sexually-based harassment was entirely unsolicited, unwelcome, and unreciprocated, and significantly interfered with Plaintiff's ability to perform her job.

23.     Plaintiff reported Ms. Paisley's sexually-based harassment to her Manager, Assistant Program Manager Dawn Lenny McDade ("Ms. Lenny").

24.     Several months after Plaintiff reported Ms. Paisley's inappropriate remarks and conduct, Ms. Paisley was terminated following an investigation by Defendants.

25.     In or around 2012, Ms. Lenny requested and obtained Plaintiff's transfer to the Philadelphia Detention Center ("DC").

26.     Shortly after Plaintiff's transfer, and in the aftermath of Plaintiff's internal complaints of sexual harassment and Ms. Paisley's termination, Plaintiff was subjected to a campaign of retaliation by Ms. Lenny, who, upon information and belief, was close friends with Ms. Paisley.

27.     In this regard, Ms. Lenny began making rude and hurtful comments to Plaintiff, telling Plaintiff, "You're so dumb," and would purposefully demean her in front of other staff members.

28.     For example, Ms. Lenny casually asked Plaintiff, "Oh, what did your brother die from?" in front of other staff members.

29.     Plaintiff complained the Program Manager at the time, James Sheffer ("Mr. Sheffer"), that she felt that Ms. Lenny was retaliating against her for reporting Ms. Paisley's sexual harassment and getting her fired as a result.

30.     In or around 2013, Mr. Sheffer transferred Plaintiff to the House of Correction ("HOC") in order to separate her from Ms. Lenny.

31.     When Plaintiff was transferred to the HOC, the Assistant Program Manager was Maryjane Rule ("Ms. Rule").

32.     Although matters improved following Plaintiff's transfer, as a result of her separation from Ms. Lenny, in or around 2015, Ms. Lenny was transferred to the HOC and requested and obtained Plaintiff's transfer back to the DC.

33.     Ms. Lenny subsequently returned to the DC and continued to treat Plaintiff in a hostile fashion.

34.     Indeed, the hostility Ms. Lenny showed to Plaintiff got to the point where Chuck Whitley ("Mr. Whitley"), Director of Human Resources, in or around 2016, told Plaintiff to stop calling the HR Hotline with complaints about Ms. Lenny.

35.     In this regard, Mr. Whitley told Plaintiff that because the HR Hotline just passes Plaintiff's complaints on to him, she should just come directly to him with any complaints about Ms. Lenny.

36.     However, because, upon information and belief, Mr. Whitley was personal friends with Ms. Lenny, Plaintiff no longer felt comfortable approaching Defendants' Human Resources Department with her concerns of retaliation.

37.     Plaintiff was thus forced to endure a hostile work environment, which caused her significant stress, anxiety, depression, and sleep loss, and which interfered with Plaintiff's ability to perform her job duties, as a result of Ms. Lenny's retaliatory conduct and Defendants' failure to adequately address her concerns.

38.     Plaintiff ultimately approached Kimberly Crowel ("Ms. Crowel"), Program Manager, to complain about Ms. Lenny's harassment and retaliation, providing Ms. Crowel with a pamphlet on workplace bullying which included information regarding a sexually-based hostile work environment and retaliation.

39.     Upon information and belief, in or around January 2017, Ms. Lenny was ultimately terminated from her employment with Defendants as the result of numerous write-ups and complaints.

40.     However, the hostile work environment Plaintiff faced continued even after Ms. Lenny's departure from the company.

41.     In this regard, in or around June 2017, a Caucasian physician with whom Plaintiff worked, Dr. Richard Saul ("Dr. Saul"), began making comments regarding Plaintiff's race.

42.     For example, Dr. Saul told Plaintiff, apropos of nothing, "My father left my mother for a black woman."

43.     Additionally, when Plaintiff came to work wearing a fabric wrap on her head, Dr. Saul told Plaintiff, "You look like those slaves on television.  Take that thing off your head."

44.     Plaintiff was shocked and upset by Dr. Saul's comments, telling him, "Dr. Saul, that's not nice.  Don't say that."

45.     Plaintiff subsequently complained to Ms. Crowel about Dr. Saul's comments, telling Ms. Crowel, "It is not okay for him [Dr. Saul] to say that."

46.     Although Ms. Crowel was supportive of Plaintiff, particularly after Defendants' investigation revealed Plaintiff's allegations against Dr. Saul to be founded, several other employees were upset with Plaintiff for reporting Dr. Saul's offensive comments and openly criticized her for doing so.

47.     In this regard, Defendants' Director of Nursing, Sharon Monaco ("Ms. Monaco"), who is not African American, told Plaintiff, "Look, I'm just as black as you are now. I have a tan."

48.     Plaintiff found Ms. Monaco's comments particularly distressing because, upon information and belief, Ms. Monaco was good friends with both Dr. Saul and Ms. Lenny, who had both recently been terminated.

49.     Moreover, following Dr. Saul's termination, Plaintiff began receiving write-ups for alleged rule infractions of a trivial nature which did not normally result in discipline.

50.     As a result of the retaliatory hostile work environment Plaintiff faced in the aftermath of Dr. Saul's termination, Plaintiff experienced severe stress, anxiety, depression, and loss of sleep, such that she was ultimately forced to call out from work.

51.     Plaintiff was subsequently terminated for reasons which are clearly pretextual.

52.     It is believed and therefore averred that Defendants subjected Plaintiff to a hostile work environment and ultimately terminated Plaintiff because of her race and/or in retaliation for her complaints of race discrimination in violation of Title VII and Section 1981.

53.     It is believed and therefore averred that Defendants subjected Plaintiff to a hostile work environment and ultimately terminated Plaintiff because of her sex and/or in retaliation for her complaints of sexual harassment in violation of Title VII.

54.     Plaintiff has, because of Defendants' wrongful termination of Plaintiff's employment, struggled to obtain other employment and has been and will be forced to expend significant funds on health insurance premium payments.

55.     As a result of Defendants' deliberate, unlawful, and malicious acts as set forth above, Plaintiff has suffered loss of employment, promotion benefits, earnings, earnings

8

potential, raises, other significant economic benefits, emotional pain and suffering, emotional distress, and humiliation.

## FACTUAL ALLEGATIONS REGARDING
## PLAINTIFF'S CLAIMS UNDER THE ADA AND FMLA

56.     Paragraphs 1 through 55 are hereby incorporated by reference as though the same were fully set forth at length herein.

57.     At all times relevant hereto, including 2016 and 2017, Defendants has employed in excess of fifty (50) people at or within a seventy-five (75) mile radius of Plaintiff's worksite(s) in Philadelphia, PA.

58.     Defendants are "covered employers" under the FMLA.

59.     In or around late July 2017, Plaintiff requested a leave of absence in connection with her serious anxiety and depression, which she informed Ms. Crowel was so severe that she had been kept overnight at a hospital for observation as a result of anxiety-induced chest pain.

60.     Indeed, Plaintiff informed Ms. Crowel that her anxiety and depression, which had been exacerbated by the hostile work environment described above, were so severe that she felt that the job was "going to kill [her]."

61.     Plaintiff's depression and anxiety were serious health conditions within the meaning of the FMLA for which Plaintiff was entitled to receive up to twelve (12) weeks of job protected leave.

62.     Notwithstanding Plaintiff's provision of notice to Defendants of her serious health condition and need for leave, Defendants failed to provide Plaintiff with notice of her potential eligibility for medical leave under the FMLA

63.     By letter dated August 2, 2017, Plaintiff was informed that she was being terminated for being absent and allegedly failing to notify Defendants' management of her "status" for three consecutive working days.

64.     Defendants' management were aware that Plaintiff was experiencing a severe episode of anxiety and depression which prevented her from working, impacted her ability to communicate, and necessitated a medical leave of absence.

65.     Defendants willfully violated the provisions of the FMLA by interfering with her right to protected medical leave and by terminating Plaintiff's employment in retaliation for attempting to exercise her rights under the same.

66.     It is believed and therefore averred that Defendants terminated Plaintiff because of her use of leave for an FMLA-qualify reason, because Plaintiff attempted to exercise her rights to leave under the FMLA to care for her own serious health conditions, and because Defendants believed that Plaintiff would take more time off pursuant to the FMLA in the future.

67.     Plaintiff's depression and anxiety were physical/mental impairments which substantially restricted Plaintiff in one of more major life activities, including, but not limited to, working, concentration, thinking, and communicating.

68.     Plaintiff was capable of performing the essential functions of her job with or without a reasonable accommodation, including, but not limited to, a reasonable medical leave of absence.

69.     Defendants failed to engage in an interactive process with Plaintiff for determining whether she could perform the essential functions of her job with or without a reasonable accommodation.

70.     It is believed and therefore averred that Defendants terminated Plaintiff's employment because of her actual disability, past record of impairment, and/or because they regarded her as disabled under the ADA.

71.     It is believed and therefore averred that Defendants terminated Plaintiff's employment in retaliation for her request for a reasonable accommodation under the ADA.

72.     Plaintiff has, because of Defendants' wrongful termination of Plaintiff's employment, struggled to obtain other employment and has been and will be forced to expend significant out of pocket expenses on health care.

73.     As a result of Defendants' deliberate, willful, malicious, and unlawful actions, Plaintiff has suffered damages, including, but not limited to, loss of employment, promotion benefits, earnings and earnings potential, loss of potential commissions and bonuses, and other economic damages, and has also suffered mental anguish, emotional pain and suffering, emotional distress, humiliation, and damage to her professional reputation.

**COUNT I**
**TITLE VII OF THE CIVIL RIGHTS ACT OF 1964**
**42 U.S.C. § 2000e, _et seq._**
**RETALIATORY HOSTILE WORK ENVIRONMENT - SEX**

74.     Paragraphs 1 through 73 are hereby incorporated by reference as though the same were fully set forth at length herein.

75.     Defendants employed in excess of fifteen (15) employees at their various locations at all times relevant hereto.

76.     Plaintiff is a woman and is therefore a member of a protected class under Title VII.

77.     Defendants permitted and/or allowed to exist a hostile work environment because of sex as described above.

11

78.     Plaintiff's internal complaints to Defendants regarding sexual harassment/sex discrimination constituted protected activity within the meaning of Title VII.

79.     Plaintiff was retaliated against for engaging in protected activity under Title VII as described above.

80.     The retaliation Plaintiff faced from, among other individuals, her supervisor Ms. Lenny, for engaging in protected activity under Title VII was sufficiently severe to alter the terms and conditions of Plaintiff's employment.

81.     The aforementioned hostile work environment adversely affected Plaintiff's psychological wellbeing and unreasonably interfered with Plaintiff's work performance.

82.     Defendants subjected Plaintiff to a retaliatory hostile work environment as a result of her complaints regarding sexual harassment in violation of Title VII.

83.     Defendants acted with malice and reckless indifference to Plaintiff's civil rights and emotional and physical wellbeing.

84.     As a direct and proximate result of Defendants' discriminatory actions, Plaintiff has suffered and is suffering significant mental, emotional, psychological, physical, and economic damages, including, but not limited to, loss of income, earnings, and earnings potential.

**WHEREFORE**, as a result of the unlawful conduct of Defendants, Plaintiff respectfully requests that this Court enter judgment in her favor and against Defendants, and grant her the maximum relief allowed by law, including, but not limited to:

a)     Back wages and front pay, in an amount to be determined at trial, but no less than one hundred and fifty thousand dollars ($150,000.00);